UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Cr. No. 17-10125-WGY(s) |
| | ) |
| v. | ) VIOLATIONS: |
| | ) |
| 2. WILLIAM PINEDA PORTILLO, | ) 18 U.S.C. § 1962(d) -- |
|    a/k/a "Humilde," and | ) Conspiracy to Conduct |
| 3. ADAM RODRIGUEZ, | ) Enterprise Affairs Through |
|    a/k/a "Pelon," | ) a Pattern of Racketeering |
|    Defendants | ) Activity |
| | ) |
| | ) 18 U.S.C. § 1963 -- |
| | ) RICO Forfeiture |
| | ) Allegations |

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Superseding Indictment, unless otherwise stated:

### The Enterprise

1.  MS-13 is a violent, transnational criminal organization involved in a variety of criminal activities, including murder, aggravated assault, extortion, abduction, kidnapping, obstruction of justice, and drug trafficking in the District of Massachusetts and elsewhere.

2.  The defendants (2) WILLIAM PINEDA PORTILLO, also known as "Humilde," and (3) ADAM RODRIGUEZ, a/k/a "Pelon," were members or associates of MS-13.

3.  MS-13 members and associates were located throughout the United States, including in Massachusetts, Virginia, Maryland, Ohio, Texas, New York, and California. MS-13 also had a large international presence in El Salvador, Guatemala, Honduras, and Mexico.

4. MS-13 originated in the 1980s in the United States among Central American immigrants in southern California. Numerous MS-13 members were deported from the United States back to El Salvador and other Central American countries in the 1990s. These members grew the gang in El Salvador, Honduras, and Guatemala, and expanded MS-13 across the United States, including to the District of Massachusetts. In El Salvador alone, MS-13 grew to include approximately 50,000 to 70,000 members. MS-13 also developed rules for members and a leadership hierarchy. MS-13 used violence to intimidate and control the local civilian population within the territory it controlled in El Salvador and as a means of attempting to influence government action and retaliating against government action it opposed in El Salvador. MS-13 engaged in extensive extortion of local businesses and individuals based on the threat of violence.

Organization of MS-13

5. MS-13 was organized into groups known as "cliques" that held regular meetings to coordinate gang activities. In the District of Massachusetts, some of the cliques are identified by names such as the Trece Loco Salvatrucha (TLS), Everett Loco Salvatrucha (ELS), Eastside Loco Salvatrucha (ESLS), Enfermos Criminales Salvatrucha (ECS), and Syko Loco Salvatrucha (SLS).

6. Each clique was run by the senior leader, who was designated the "*Primera Palabra*," or "First Word," and the second-in-command, who was designated the "*Segunda Palabra*" or "Second Word." The other members and associates of the clique took their orders from the First Word or Second Word. The leaders of the respective cliques attended larger general meetings to manage gang operations on a regional and international level.

7. MS-13 members attended clique meetings and were required to pay dues. MS-13 members obtained money through illegal means, including, but not limited to, extortion and drug trafficking. The money was provided to clique leaders and used to finance clique activities, to

provide support for clique members who were in jail, and to send funds to MS-13 leadership in El Salvador to support the gang there, including the purchase of weapons.

8. MS-13 recruits were indoctrinated into MS-13 rules. One prominent rule encouraged MS-13 members and associates to confront, fight, and kill rival gang members, known as "*chavalas*." Another prominent rule required MS-13 members and associates to identify individuals cooperating with law enforcement authorities. When such individuals were identified, MS-13 members and associates were required to notify senior gang members, who typically ordered (*i.e.*, "green lighted") the killing of the individuals cooperating with law enforcement authorities.

9. To promote their gang identity, MS-13 members and associates often, but not always, wore blue or white clothing (the colors of the El Salvadoran flag), as well as clothing displaying the number "13" or numbers that total 13, such as "76." MS-13 members and associates also often, but not always, had tattoos reading "Mara Salvatrucha," "MS," or "MS-13," and marked their territory with graffiti displaying those names and symbols associated with the gang. One such symbol was the MS-13 hand sign, meant to resemble both an inverted "M" and the face of the devil, with outstretched fingers representing devil's horns. More recently, some MS-13 members more discreetly and less publicly signified their membership by avoiding such clothing and hiding such tattoos in order to avoid detection by law enforcement. MS-13 members referred to one another by their gang names or other nicknames, and may not have known fellow gang members except by these gang names.

10. In order to protect the power, reputation, and territory of MS-13, members and associates were required to use violence, threats of violence, and intimidation. These acts of violence included murder and assault with deadly weapons, including firearms, machetes, and

knives. MS-13 members and associates maintained and enhanced their status in the gang, and the overall reputation of the gang, by participating in such violent acts.

## The Racketeering Enterprise

11.   MS-13, including its leaders, members, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. MS-13 was an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Purposes of the Enterprise

12.   The purposes of the MS-13 enterprise included the following:

   a. Preserving, expanding, and protecting the power, territory, and reputation of MS-13 through the use of violence, threats of violence, and intimidation;

   b. Establishing control of territory and civilian populations that MS-13 could use and exploit to benefit the gang;

   c. Promoting and enhancing MS-13 and the activities of its members and associates by committing crimes, including, but not limited to, murder;

   d. Keeping victims, potential victims, community members, and law enforcement in fear of MS-13 and its members and associates through violence, threats of violence, and intimidation;

   e. Confronting and retaliating against rival gangs through the use of violence, threats of violence, and intimidation;

   f. Assaulting and murdering individuals believed to be cooperating with law enforcement authorities;

g. Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending MS-13 members; and

h. Providing financial support and information to MS-13 members, including those incarcerated in the United States and in El Salvador.

### Means and Methods of the Enterprise

13.  Among the means and methods by which MS-13 members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a. MS-13 members and associates used violence, threats of violence, and intimidation to preserve, protect, and expand the enterprise's territory and activities and to enhance its prestige, reputation, and position in the community;

b. MS-13 members and associates promoted a climate of fear through violence, threats of violence, and intimidation;

c. MS-13 members and associates used violence, threats of violence, and intimidation to discipline and punish members and associates who violate enterprise rules;

d. MS-13 members and associates collected dues, often the proceeds of drug trafficking and extortions, to send to MS-13 members incarcerated in the United States and El Salvador and to MS-13 leadership in El Salvador, in an effort to provide financial support for the enterprise, including for the purchasing of weapons to use to commit acts of violence in El Salvador;

e. MS-13 members and associates committed violent crimes in order to be promoted in the gang, which had, among others, the following positions in ascending order: "*paro*," "*observacion*," "*chequeo*," and "*homeboy*";

f. MS-13 members and associates operated subject to a hierarchy and rules that required authorizations be obtained from MS-13 leaders for certain violent crimes, including murders.

## COUNT ONE
(Conspiracy to Participate in a Racketeering Enterprise)

THE GRAND JURY FURTHER CHARGES THAT:

14. The GENERAL ALLEGATIONS of this Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

15. Beginning in and around 2010 and continuing through the present, both dates being approximate and inclusive, in Boston, Everett, Chelsea, and Somerville in the District of Massachusetts and elsewhere, the defendants (2) WILLIAM PINEDA PORTILLO, a/k/a "Humilde," and (3) ADAM RODRIGUEZ, a/k/a "Pelon," and other persons known and unknown to the Grand Jury, being persons employed by and associated with MS-13, which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire with (1) MANUEL LANDAVERDE, a/k/a "Anderson Chacon," a/k/a "Tony Colon," a/k/a "Henry Enrique," a/k/a "Scooby," and others to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity consisting of multiple acts involving murder, in violation of Massachusetts General Laws, Chapter 265, Section 1 (murder), Section 15 (assault with intent to murder), Section 16 (attempt to murder), and Section 18 (armed assault with intent to murder), and Massachusetts General Laws, Chapter 274, Section 7 (conspiracy to commit murder).

16. It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

17. In furtherance of the conspiracy, and to effect the object thereof, the defendants, and others known and unknown to the Grand Jury, committed overt acts in the District of Massachusetts and elsewhere, including, but not limited to, the following:

   a. On or about December 18, 2010, in Chelsea, Massachusetts, (3) ADAM RODRIGUEZ, a/k/a "Pelon," and other members of MS-13 murdered Joaquin Aguilar. RODRIGUEZ and other MS-13 members used an automobile registered to the father of (2) WILLIAM PINEDA PORTILLO, a/k/a "Humilde," to bring Aguilar to Chelsea, where they had planned to murder him. When homicide investigators attempted to question PINEDA PORTILLO after the murder, they learned that PINEDA PORTILLO had traveled to El Salvador. PINEDA PORTILLO remained in El Salvador from in or about March 2011 to in or about July 2012.

   b. On or about January 26, 2011, MS-13 members met in East Boston, Massachusetts. This meeting was recorded by law enforcement. During the meeting, (3) ADAM RODRIGUEZ, a/k/a "Pelon," was beaten for thirteen seconds for fleeing the District of Massachusetts after the murder of Aguilar without permission of MS-13 leaders. During the meeting, RODRIGUEZ acknowledged that he participated in the murder and fled the District of Massachusetts to avoid being apprehended by law enforcement.

   c. On or about February 4, 2013, in Lynn, Massachusetts, (3) ADAM RODRIGUEZ and other MS-13 members known and unknown to the Grand Jury

attempted to murder Victim 1, an individual known to the Grand Jury, and threatened to murder Victim 1's family if they reported the attack to law enforcement.

   d. On or about April 29, 2015, (2) WILLIAM PINEDA PORTILLO, a/k/a "Humilde," worked with (1) MANUEL LANDAVERDE, a/k/a "Anderson Chacon," a/k/a "Tony Colon," a/k/a "Henry Enrique," a/k/a "Scooby," to sell a firearm to a fellow MS-13 member who was in reality a cooperating witness working with law enforcement.

   e. On or about May 31, 2015, (2) WILLIAM PINEDA PORTILLO, a/k/a "Humilde," conspired to murder an MS-13 member he believed was cooperating with law enforcement.

   f. On or about July 6, 2017, (3) ADAM RODRIGUEZ and an MS-13 member known to the Grand Jury attempted to murder Victim 2, an individual known to the Grand Jury, and Victim 3, an individual unknown to the Grand Jury, with knives.

All in violation of Title 18, United States Code, Section 1962(d).

## RICO FORFEITURE ALLEGATIONS
(18 U.S.C. § 1963)

The Grand Jury further charges that:

18. The allegations of Count One of this Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963.

19. Upon conviction of the offense in violation of Title 18, United States Code, Section 1962, set forth in Count One of this Superseding Indictment,

  2.  WILLIAM PINEDA PORTILLO,
      a/k/a "Humilde," and
  3.  ADAM RODRIGUEZ,
      a/k/a "Pelon,"

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963:

(a) all interests the defendants have acquired or maintained in violation of Title 18, United States Code, Section 1962, wherever located, and in whatever names held;

(b) all interests in, securities of, claims against, or properties or contractual rights of any kind affording a source of influence over, any enterprise which the defendants have established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

(c) all property constituting, and derived from, any proceeds which the defendants obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

20. If any of the property described in paragraph 19 hereof as being forfeitable pursuant to Title 18, United States Code, Section 1963, as a result of any act and omission of the defendants --

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of this Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 19 above.

All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
CHRISTOPHER POHL
BRIAN A. FOGERTY
MEGHAN C. CLEARY
Assistant U.S. Attorneys

DISTRICT OF MASSACHUSETTS					November 7, 2023

Returned into the District Court by the Grand Jurors and filed.

_____  11/07/2023
Deputy Clerk