UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Cr. No. 17-10125-WGY(ss) |
| | ) |
| v. | ) VIOLATIONS: |
| | ) |
| 2. WILLIAM PINEDA PORTILLO, <br>    a/k/a "Humilde," and <br> 4. JOSE VASQUEZ, <br>    a/k/a "Cholo," <br>    a/k/a "Little Crazy," | ) 18 U.S.C. § 1962(d) -- <br> ) Conspiracy to Conduct <br> ) Enterprise Affairs Through <br> ) a Pattern of Racketeering <br> ) Activity |
| | ) |
| Defendants. | ) 18 U.S.C. § 1959(a)(1) -- <br> ) Violent Crime in Aid of <br> ) Racketeering Activity |
| | ) |
| | ) 18 U.S.C. § 1963 -- <br> ) RICO Forfeiture <br> ) Allegations |

SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times material to this Second Superseding Indictment, unless otherwise stated:

The Enterprise

1. MS-13 was a violent, transnational criminal organization involved in a variety of criminal activities, including acts involving murder, assault, extortion, kidnapping, obstruction of justice, and drug trafficking in the District of Massachusetts and elsewhere.

2. The defendants (2) WILLIAM PINEDA PORTILLO, also known as "Humilde," and (4) JOSE VASQUEZ, a/k/a "Cholo," a/k/a "Little Crazy," were members or associates of MS-13.

3. MS-13 members and associates were located throughout the United States, including in Massachusetts, Virginia, Maryland, Ohio, Texas, New York, and California. MS-13 also had a large international presence in El Salvador, Guatemala, Honduras, and Mexico.

### Organization of MS-13

4. MS-13 was organized into groups known as "cliques" that held regular meetings to coordinate gang activities. In the District of Massachusetts, some of the cliques are identified by names such as the Trece Loco Salvatrucha (TLS), Everett Loco Salvatrucha (ELS), Eastside Loco Salvatrucha (ESLS), Enfermos Criminales Salvatrucha (ECS), Syko Loco Salvatrucha (SLS), and the Uniones Locos Salvatrucha ("ULS" or "Uniones").

5. Each clique was run by the senior leader, who was designated the "*Primera Palabra*," or "First Word," and the second-in-command, who was designated the "*Segunda Palabra*" or "Second Word." The other members and associates of the clique took their orders from the First Word or Second Word. The leaders of the respective cliques attended larger general meetings to manage gang operations on a regional and international level.

6. MS-13 members attended clique meetings and were required to pay dues. MS-13 members obtained money through illegal means, including, but not limited to, extortion and drug trafficking. The money was provided to clique leaders and used to finance clique activities, to provide support for clique members who were in jail, and to send funds to MS-13 leadership in El Salvador to support the gang there.

7. MS-13 recruits were indoctrinated into MS-13 rules. One prominent rule encouraged MS-13 members and associates to confront, fight, and kill rival gang members, known as "*chavalas*." Another prominent rule required MS-13 members and associates to identify individuals cooperating with law enforcement authorities. When such individuals were identified,

MS-13 members and associates were required to notify senior gang members, who typically ordered (*i.e.*, "green lighted") the killing of the individuals cooperating with law enforcement authorities.

8. To promote their gang identity, MS-13 members and associates often, but not always, wore blue or white clothing (the colors of the El Salvadoran flag), as well as clothing displaying the number "13" or numbers that total 13, such as "76." MS-13 members and associates also often, but not always, had tattoos reading "Mara Salvatrucha," "MS," or "MS-13," and marked their territory with graffiti displaying those names and symbols associated with the gang. One such symbol was the MS-13 hand sign, meant to resemble both an inverted "M" and the face of the devil, with outstretched fingers representing devil's horns. More recently, some MS-13 members dressed more discreetly and less publicly signified their membership by avoiding such clothing and hiding such tattoos in order to avoid detection by law enforcement. MS-13 members referred to one another by their gang names or other nicknames, and may not have known fellow gang members except by these gang names.

9. In order to protect the power, reputation, and territory of MS-13, members and associates were required to use violence, threats of violence, and intimidation. These acts of violence included acts involving murder and assault, including with firearms, machetes, and knives. MS-13 members and associates maintained and enhanced their status in the gang, and the overall reputation of the gang, by participating in such violent acts.

### The Racketeering Enterprise

10. MS-13, including its leaders, members, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The

MS-13 enterprise was an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Purposes of the Enterprise

11. The purposes of the MS-13 enterprise included the following:

    a. Preserving, expanding, and protecting the power, territory, and reputation of MS-13 through the use of violence, threats of violence, and intimidation;

    b. Promoting and enhancing MS-13 and the activities of its members and associates by committing crimes, including, but not limited to, murder;

    c. Keeping victims, potential victims, community members, and law enforcement in fear of MS-13 and its members and associates through violence, threats of violence, and intimidation;

    d. Confronting and retaliating against rival gangs through the use of violence, threats of violence, and intimidation;

    e. Assaulting and murdering individuals believed to be cooperating with law enforcement authorities;

    f. Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending MS-13 members; and

    g. Providing financial support and information to MS-13 members, including those incarcerated in the United States and in El Salvador.

## Means and Methods of the Enterprise

12. Among the means and methods by which MS-13 members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a. MS-13 members and associates used violence, threats of violence, and intimidation to preserve, protect, and expand the enterprise's territory and activities and to enhance its prestige, reputation, and position in the community;

b. MS-13 members and associates promoted a climate of fear through violence, threats of violence, and intimidation;

c. MS-13 members and associates used violence, threats of violence, and intimidation to discipline and punish members and associates who violate enterprise rules;

d. MS-13 members and associates collected dues, often the proceeds of drug trafficking and extortions, to send to MS-13 leadership in El Salvador, in an effort to provide financial support for the enterprise;

e. MS-13 members and associates committed violent crimes in order to be promoted in the gang, which had, among others, the following positions in ascending order: "*paro*," "*observacion*," "*chequeo*," and "homeboy";

f. MS-13 members and associates operated subject to a hierarchy and rules that required authorizations be obtained from MS-13 leaders for certain violent crimes, including murders.

## COUNT ONE
(Conspiracy to Participate in a Racketeering Enterprise)

The Grand Jury Further Charges That:

13. The General Allegations of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

14. Beginning in and around 2010 and continuing through the present, both dates being approximate and inclusive, in Boston, Everett, Chelsea, and Somerville in the District of Massachusetts, the District of Maryland, and elsewhere, the defendant (2) WILLIAM PINEDA

PORTILLO, a/k/a "Humilde," and other persons known and unknown to the Grand Jury, each being a person employed by and associated with MS-13, an enterprise which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire and agree with (4) Jose Vasquez, a/k/a "Cholo," a/k/a "Little Crazy," and others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving murder, in violation of Massachusetts General Laws, Chapter 265, Section 1 (murder), Section 15 (assault with intent to murder), Section 16 (attempt to murder), and Section 18 (armed assault with intent to murder), and Massachusetts General Laws, Chapter 274, Sections 2 (aiding and abetting) and 7 (conspiracy to commit murder), and multiple offenses involving the distribution of controlled substances, in violation of 21 U.S.C. §§ 846 and 841.

15. It was a further part of the conspiracy that (2) PINEDA PORTILLO agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## Overt Acts

16. In furtherance of the racketeering conspiracy, and to effect the object thereof, (2) PINEDA PORTILLO, and others known and unknown to the Grand Jury, committed, and caused to be committed, various overt acts in the District of Massachusetts and elsewhere, including, but not limited to, the following:

    a. On or about December 18, 2010, in Chelsea, Massachusetts, (4) Jose Vasquez, a/k/a "Cholo," a/k/a "Little Crazy," and other members and associates of MS-13

murdered Joaquin Aguilar. After the murder, (4) Vasquez fled to the District of Maryland to avoid being questioned by law enforcement.

      b.     (2) PINEDA PORTILLO drove (4) Vasquez and other members and associates of MS-13 to Chelsea before Aguilar was murdered. After the murder, and before homicide investigators could question him, (2) PINEDA PORTILLO fled to El Salvador. (2) PINEDA PORTILLO remained in El Salvador from in or about March 2011 to in or about July 2012.

      c.     On or about April 29, 2015, (2) PINEDA PORTILLO worked with another member of MS-13 to sell a firearm to a fellow MS-13 member who was in reality a cooperating witness working with law enforcement.

      d.     On or about June 1, 2015, (2) PINEDA PORTILLO conspired to murder an MS-13 member he believed was cooperating with law enforcement.

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO
(Violent Crime In Aid of Racketeering)
(18 U.S.C. § 1959(a)(1))

The Grand Jury further charges that:

17. The allegations contained in paragraphs 1 through 12 are realleged and incorporated as if fully set forth in this paragraph.

18. At all times relevant to this Second Superseding Indictment, MS-13, including its leadership, its members, and its associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

19. At all times relevant to this Second Superseding Indictment, the above-described MS-13 enterprise, through its leadership, its members, and its associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, in violation of the laws of the Commonwealth of Massachusetts, and offenses involving the distribution of controlled substances, in violation of 21 U.S.C. §§ 846 and 841.

20. On or about December 18, 2010, in Chelsea, in the District of Massachusetts, the defendant (4) JOSE VASQUEZ, a/k/a "Cholo," a/k/a "Little Crazy," and other members and associates of MS-13 known and unknown to the Grand Jury, aided and abetted by each other, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, did murder Joaquin Aguilar, in violation of Massachusetts General Laws Chapter 265, Section 1 and Chapter 274, Section 2, to wit, did murder Joaquin Aguilar deliberately and with premeditated malice aforethought.

All in violation of Title 18, United States Code, Sections 2 and 1959(a)(1).

9

## RICO FORFEITURE ALLEGATIONS
(18 U.S.C. § 1963)

The Grand Jury further charges that:

21. The allegations of Count One of this Second Superseding Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963.

22. Upon conviction of the offense in violation of Title 18, United States Code, Section 1962, set forth in Count One of this Second Superseding Indictment,

>     (2)   WILLIAM PINEDA PORTILLO,
>           a/k/a "Humilde,"

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963:

(a) any interests the defendant has acquired or maintained in violation of Title 18, United States Code, Section 1962, wherever located;

(b) any interests in, securities of, claims against, or properties or contractual rights of any kind affording a source of influence over, any enterprise which the defendant has established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

(c) any property constituting, and derived from, any proceeds which the defendant obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

23. If any of the property described in paragraph 22 hereof as being forfeitable pursuant to Title 18, United States Code, Section 1963, as a result of any act and omission of the defendant --

   (a)  cannot be located upon the exercise of due diligence;

   (b)  has been transferred to, sold to, or deposited with a third party;

   (c)  has been placed beyond the jurisdiction of this Court;

   (d)  has been substantially diminished in value; or

   (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 22 above.

  All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
CHRISTOPHER POHL
BRIAN A. FOGERTY
MEGHAN C. CLEARY
Assistant U.S. Attorneys

DISTRICT OF MASSACHUSETTS                         September 11, 2024

Returned into the District Court by the Grand Jurors and filed.

/s/ Leonardo T. Vieira, 3:09pm
_____
Deputy Clerk

12